**UNITED STATES DISTRICT COURT**
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DANIEL MCNULTY,**<br>             Plaintiff<br><br>v.<br><br>**AETNA LIFE INSURANCE COMPANY,**<br>             Defendant | **CIVIL ACTION NO.**<br><br>**05-40114FDS** |

**MEMORANDUM IN SUPPORT OF
DEFENDANT, AETNA CASUALTY AND LIFE INSURANCE COMPANY'S
MOTION TO DISMISS**
_____

**I.    INTRODUCTION**

The defendant in this action, Aetna Life Insurance Company ("Aetna"), requests that this Court dismiss Count II of the plaintiff's complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Count II of the plaintiff's complaint alleges a claim under Massachusetts General Laws chapter 93A. As discussed in detail below, the plaintiff cannot recover from Aetna on his General Laws chapter 93A claim because such claims are clearly preempted as a matter of law in this circuit.

**II.   FACTS**

The facts alleged in the plaintiff's complaint are minimal and straight forward. The plaintiff alleges that he was receiving Long Term Disability benefits from Aetna. Complaint at ¶ 4.[1] He alleges that he was also receiving workers compensation benefits, and that those benefits generated an offset against his Long Term Disability benefits. Complaint at ¶ 6. The plaintiff alleges that he entered into a lump sum settlement of $90,000 on his workers compensation claim. Complaint at ¶ 7. The plaintiff alleges that the lump sum settlement should have resulted in an offset against his Long Term Disability benefits of $17,439.36, but that Aetna has asserted that the offset is instead $72,439.36. Complaint at ¶¶ 7 - 8.

In Count II of the complaint, the plaintiff alleges that these events give rise to liability on the part of Aetna under General Laws chapter 93A, and that the plaintiff is entitled to an award of multiple damages under General Law chapter 93A. Complaint at ¶¶ 10 - 14.

**III.   COUNT II OF THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST AETNA UPON WHICH RELIEF CAN BE GRANTED AND SHOULD, THEREFORE, BE DISMISSED.**

As detailed above, Count II of the complaint is expressly and solely a claim against Aetna seeking recovery under General Laws chapter 93A for Aetna's actions in calculating and applying

---

[1] Although not alleged in the complaint, and irrelevant for purposes of Aetna's motion to dismiss, the plaintiff had been employed by Polaroid, and Aetna's role in this matter was to administer claims for long term disability benefits under Polaroid's employee benefit plan. Aetna's exact role, and the fact that it is not depicted in the plaintiff's complaint, does not affect the outcome of this motion to dismiss. The plaintiff acknowledges in his complaint that his claim is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). See Complaint at ¶ 3. The plaintiff further alleges that his claim against Aetna is for alleged errors in calculating the benefits to which he is entitled under ERISA. See Complaint at ¶¶ 5 - 9. As discussed in detail *infra*, a claim under General Laws chapter 93A based on alleged misconduct in the handling of a benefit claim governed by ERISA is preempted in this circuit as a matter of law. As a result, under the allegations of the complaint, a finding of ERISA preemption is mandated, and the plaintiff's failure to characterize Aetna's exact role does not alter this fact.

the offset against his Long Term Disability benefits of the lump sum settlement of his workers compensation claim. The plaintiff acknowledges in his complaint, however, that this action is governed by ERISA, and thus, by extension, that the Long Term Disability benefits are due him under an employee welfare benefit plan. As a result, the only conclusion that the plaintiff's allegations permit is that the calculation of the offset was part of the administration and provision of an employee welfare benefit plan. This was, in fact, the case. See Exhibit 1 (August 6, 2004 letter from Aetna to plaintiff's counsel explaining Aetna's determination of benefits and impact of the workers compensation lump sum settlement under the terms of the employee benefit plan established by Polaroid Corporation).[2] In this circuit, "state law claims based on the improper processing of a claim for benefits are preempted by ERISA since the existence and terms of the plan are critical to the plaintiff's claims." Andrews-Clarke v. Lucent Technologies, Inc., 157 F.Supp.2d 93, 104 (D. Mass. 2001). The express preemption provision in the ERISA statute precludes "state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." Turner v. Fallon Community Health Plan, 127 F.3d 196, 199 (1st Cir. 1997).

The United States Court of Appeals for the First Circuit has discussed the preemption by ERISA of claims brought under General Laws chapter 93A in great detail. In Hotz v. Blue Cross & Blue Shield of Massachusetts, Inc., 292 F.3d 57 (2002), the United States Court of Appeals for the First Circuit affirmed the dismissal of the plaintiff's claim based on General Laws chapters 93A on the ground that it was preempted by ERISA. Hotz at 59-60. The Court reemphasized that this rule

---

[2] Although the August 6, 2004 letter is not part of the plaintiff's complaint, its existence and contents are essential to the plaintiff's claim as it sets forth the final decision of the claim administrator that the plaintiff seeks to overturn in this litigation. Further, there is no dispute over its authenticity, as it constitutes the operative document challenged by the plaintiff in this litigation. As there will be no dispute in this action over the letter's authenticity and both it and its contents are central to the plaintiff's claims against Aetna, this Court may consider this exhibit in ruling on this motion to dismiss, even though it is not referenced in the plaintiff's complaint. See Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92, 94 (D. Mass. 2000).

of preemption applies to such claims despite recent evolution in the case law construing the scope of ERISA preemption and the extent to which the so-called savings clause in ERISA prevents preemption of some statutory claims, explaining as follows:

> We turn, then, to the question of preemption. Hotz concedes that if what Blue Cross promises to provide is deemed a plan benefit, then her state law claim falls at least initially within 29 U.S.C. § 1144(a). That section broadly preempts any state law claim that "relate[s] to" an employee benefit plan, and it has been applied widely to bar state claims seeking damages for alleged breach of obligations pertaining to an ERISA plan. Hotz's answer is that section 1144(b)'s saving clause preserves her claim as one brought under a state law that "regulates insurance." The Supreme Court has used several formulas to delineate the scope of the saving clause. In a trilogy of cases, it has asked whether the state law regulates insurance under a "common-sense view" of the term and, separately, whether the practice falls within the phrase "business of insurance" for purposes of the McCarran-Ferguson Act based on three more technical factors. Much of the emphasis in the trilogy is on whether the claim or rule invoked by the plaintiff is exclusive to insurance regulation . . . The underlying notion is that a claim or rule directed only to insurance is one that "regulates insurance" while one that regulates insurance along with everything else is not within the quoted phrase. Exclusivity is an ambiguous label in this case. The substantive prohibition on delay in claim processing in chapter 176D is directed solely at the insurance industry, but the private action for multiple damages and attorney's fees claim brought by Hotz is created by chapter 93A, § 9, which applies to unfair commercial practices in any industry. Yet looking through form to substance, chapter 176D, § 3, invoked by Hotz, is (by its own terms) merely a specification of particular "unfair methods of competition and unfair or deceptive acts or practices"--which are banned in more general terms, and for all industries, in chapter 93A . . .On balance, our case seems closer to [the United States Supreme Court's decision in the case of] *Pilot Life*, where the Court held to be preempted a punitive damages tort claim for egregious nonpayment of benefits under an insurance policy. Under state law, such punitive damages were also available for egregious violations of contracts unrelated to insurance, just as chapter 93A is available for non-insurance unfair trade practices. In addition, the Court in *Pilot Life*--quite apart from the "common-sense view" and McCarran-Ferguson tests--emphasized that to allow punitive damages for failure to pay benefits was at odds with Congress's refusal to allow punitive damages for benefit claims under ERISA. On this last rationale, other circuits have in a number of cases held claims under various state statutes similar to Massachusetts' to be preempted by ERISA despite the saving clause. . . [U]nder current Supreme Court precedent, we feel bound by the similarity of *Pilot Life* to our own case and by the close fit of its final rationale to Hotz's chapter 93A claim.

Id. at 59-60  (Internal citations omitted).

The United States District Court for the District of Massachusetts recently reaffirmed in Dreznin v. Reliance Standard Life Ins. Co., 350 F.Supp.2d 308 (D.Mass. 2004), that claims brought

under General Laws chapter 93A are preempted by ERISA. The Court held in Dreznin that, under the most recent development of Supreme Court jurisprudence concerning ERISA preemption, claims under General Laws chapter 93A and under General Laws chapter 176D remain preempted. Id. at 312.

The plaintiff in the case at bar seeks recovery under that same state statutory regime for acts by Aetna when it was administering an employee benefit plan that is subject to ERISA. As such, under controlling precedent in this Circuit, the claim is preempted and should be dismissed.

**IV.   CONCLUSION**

For the reasons detailed above, Count II of the plaintiff's complaint fails to state a cause of action against this defendant upon which relief can be granted. Accordingly, this Court should dismiss Count II of the plaintiff's complaint in accordance with Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**Aetna Life Insurance Company**
By its attorneys,

**Dated:** September 15, 2005

/s/*Stephen Rosenberg*
Stephen D. Rosenberg
**The McCormack Firm**
One International Place - 7th Floor
Boston, MA   02110
Ph:   617/951-2929

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by depositing a copy hereof in the U.S. Mail, postage prepaid, addressed to:

> Walter J. Korzeniowski     [BBO #548866]
> **Law Offices of Walter J. Korzeniowski**
> 448 Turnpike Street
> South Easton, MA   02375
> Ph:   508/238-6200
> *[Attorney for Plaintiff]*

**DATED** this 15th day of September, 2005.

> /s/*Stephen Rosenberg*
> Stephen D. Rosenberg
> **The McCormack Firm**
> One International Place - 7th Floor
> Boston, MA   02110
> Ph:   617/951-2929
> *[Attorney for Defendant, Aetna]*

77103.1



Aetna Life Insurance Company  
Centralized Appeals Unit  
PO Box 14557  
Lexington, KY 40512-4557

Maria Piotrowski  
Sr. Technical Specialist  
Fax: (866) 275-2174  
Tel: 1-877-238-6202

** File Copy **

August 6, 2004

Law Offices of Walter Korzeniowski  
448 Turnpike Street, Suite 2-5  
South Easton, MA 02375

Group Control No:   368417  
Employer:           Polaroid Corporation  
Employee:           Daniel M. McNulty  
SS-Cert No:         SSN Redacted

Dear Attorney Korzeniowski:

We have concluded our review regarding the adjustment of a detailed worker's compensation award approved September 30, 2002.

Pursuant to the terms of the Polaroid Corporation, the plan documents the following policy as it relates to other income and its effect on the reduction of Mr. McNulty's Long Term Disability monthly benefit:

*"Temporary or permanent, partial or total, disability benefits under any workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: Loss of past and future wages, impaired earning capacity, lessened ability to compete in the open labor market, any degree of permanent impairment and any degree of loss of bodily function or capacity.*

*Other income benefits include those, due to your disability or retirement, which are payable to you, your spouse, your children or dependents.*

<u>Worker's Compensation Benefit Payments In a Lump Sum:</u>

*That part of the lump sum payment that is for disability will be counted. This will be done if it is or is not the result of a compromise, award or judgment. If there is no proof acceptable to Aetna as to what part is, 50 % will be deemed for disability.*

*This amount will be broken down to a 60 month period. The 60 months will start on the same date as the period for which the lump sum payment is made. If the*

EXHIBIT 1

2
August 6, 2004
Daniel McNulty

*lump sum payment is not tied to a specific period, the 60 months will start on the dater that the lump sum payment is made."*

On September 30, 2002, The Commonwealth of Massachusetts approved an Agreement for Liability by Lump Sum at which time Mr. McNulty was awarded a Sum of $ 90,000.00. Deductions from this award were made as follows:

1. Attorney Fee and Expenses in the amount of $ 17,560.64
2. Inchoate right payable to spouse, Donna, in the amount of $36,000.00
3. Future psychological treatment in the amount of $5,000.00
4. Treatment not covered by other sources in the amount of $9,000.00
5. Future vocational rehabilitation costs in the amount of $5,000.00

Net to Claimant after deductions was in the amount of $ 17,439.36

Based on the policy provision governing "other income", the amounts indicated above respectively of $36,000.00; $5,000.00; $9,000.00; $5,000.00 and $ 17,439.36 are indicative of other income, which reduce Mr. McNulty's monthly benefit.

In construing the policy, the amounts listed above as other income are monies awarded due to disability, either payable to Mr. McNulty or his spouse which compensate loss of past and future wages, impaired earning capacity, lessened ability to compete in the open labor market, any degree of permanent impairment and any degree of loss of bodily function or capacity.

Therefore the total of $72,439.36 should be divided by 60 months as indicated in his policy. This would yield an offset of $ 1207.32 monthly from the period of October 1, 2002 through September 30, 2007. Because Mr. McNulty was paid only his minimum monthly benefits from October 1, 2002, no overpayment has accrued.

Please be advised that this is our final decision regarding Mr. McNulty's Long Term Disability claim.

You are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to the claim, as well as any specific rule, guideline or protocol relied on in the adverse determination. You have the right to bring an action under Section 502(a) of ERISA.

2

3.
August 6, 2004
Daniel McNulty

If you have any questions, please call 1-877-238-6202.

Sincerely,


Maria Piotrowski
Aetna Life Insurance Company